**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL J. HOUSTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:19 CV 2545 DDN |
| | ) | |
| WILLIAM STANGE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

This matter is before the Court upon the petition of Missouri state prisoner Michael J. Houston for a writ of habeas corpus under 28 U.S.C. § 2254.  The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).  For the reasons set forth below, the petition for a writ of habeas corpus is denied.

## BACKGROUND

On April 3, 2014, petitioner Houston was convicted in the Circuit Court of the City of St. Louis of forcible rape, forcible sodomy, and kidnapping.  On May 16, 2014, petitioner was sentenced to concurrent sentences of life imprisonment for the forcible rape and the forcible sodomy, and to a fifteen-year consecutive sentence for the kidnapping.

Petitioner directly appealed the convictions and sentence. The Missouri Court of Appeals affirmed without a published opinion pursuant to Missouri Supreme Court Rule 30.25(b).  *State v. Houston*, 474 S.W.3d 599 (Mo. Ct. App. 2015).   In its Memorandum Supplementing Order Affirming Judgment Pursuant to Rule 84.16(b) (Doc. 15-9) the Missouri Court of Appeals, in its affirmance of the trial court's judgment entered upon the jury verdict, described petitioner's case thusly:

### I. BACKGROUND
#### A. Evidence Presented at Defendant's Jury Trial

Defendant does not challenge the sufficiency of the evidence to support his convictions.  Viewed in the light most favorable to the verdict, the evidence presented at Defendant's jury trial revealed the following.

On June 22, 2012, A.S. was traveling on a bus on her way home from school. On the bus, A.S. met a man who called himself Reggie, and they made plans to get together later in the day. When A.S. and Reggie met up later that afternoon, they talked about their mutual interest in music and decided to meet up with a friend of Reggie's named Buddy (later identified as Defendant) who had a recording studio.

A.S. and Reggie met Defendant at a liquor store. After a period of drinking alcohol and socializing, A.S., Reggie, Defendant, and Defendant's young son, who was five or six-years-old, left to go to Defendant's recording studio. At some point while they were walking, Reggie and Defendant began arguing, and Defendant pulled out a Taser. Reggie eventually ran away, and Defendant told A.S. to put her hands against a nearby car. After Defendant pushed A.S., A.S. complied with his demands.

A.S. asked Defendant to help her find a bus to get back home, and Defendant took her and his son through a shortcut in an alley. When they got to a white garage in the alley, Defendant ordered A.S. to get on her knees to perform oral sex on him. Defendant unzipped his pants while still holding the Taser, and A.S. did not feel like she could leave. A.S. performed oral sex on Defendant while his son watched, repeatedly telling Defendant she did not want to do it, but feeling like she had to in order to survive.

When A.S. stood up, Defendant told her to turn around, Defendant made A.S. take her pants off, and Defendant penetrated A.S. from behind. During the sexual assault, Defendant told his son to look the other way. Defendant stopped sexually assaulting A.S. when they heard police sirens, and Defendant and A.S. subsequently went their separate ways.

A.S. walked to her father's house, told him what happened, and he called the police. When officers arrived, A.S. took them to the area by the white garage where the sexual assault had taken place and told them what happened. The officers then brought A.S. to a hospital, where police took A.S.'s underwear into evidence and a nurse performed a sexual assault examination on A.S.

A few days later, A.S. went on Facebook and found a picture of Reggie and Defendant,[1] whom A.S. recognized as the man who sexually assaulted her. A.S. contacted the police and told him what she had found. A.S. later identified Defendant from a photospread that officers showed her, with A.S. writing on Defendant's picture, "He raped me while his son was there."  Additionally, a DNA sample was taken from Defendant pursuant to a search warrant, and a laboratory analysis determined Defendant's DNA was in seminal fluid found on A.S.'s underwear and on a vaginal swab which was taken from A.S. during her examination at the hospital.

Defendant was subsequently charged with one count of forcible rape, one count of forcible sodomy, and one count of kidnapping for the events involving A.S. on June 22, 2012.

_____
1 The man "tagged" in the picture with Reggie was identified as "Buddy" on Facebook, and Defendant used the name "Buddy Bunson" on his Facebook page.

## B. Relevant Procedural Posture

Defendant was initially represented by a public defender, but private counsel entered her appearance for Defendant on Wednesday, March 26, 2014. On Friday, March 28, 2014, the criminal assignment judge for the Circuit Court of the City of St. Louis, the Honorable Bryan L. Hettenbach ("Judge Hettenbach" or "the judge"), entered an order granting the public defender leave to withdraw from Defendant's case. On that same date, private counsel appeared before Judge Hettenbach and moved to continue Defendant's case, and the judge denied the motion.

Defendant's jury trial took place before the Honorable Edward W. Sweeney, Jr. ("the trial court" or "the court") from Monday, March 31 to Thursday, April 3, 2014. During a pre-trial conference on March 31, the trial court and counsel discussed the circumstances surrounding Judge Hettenbach's rulings.[2]

The trial court stated it was aware private counsel had moved for a continuance on the preceding Friday, and counsel told the court she made the motion because she had "just entered[her appearance] on the case [on Wednesday, March 26]." The prosecutor told the trial court she and Defendant's public defender had appeared before Judge Hettenbach on Thursday, March 27 and a discussion took place which revealed:

> [T]he judge . . . was not inclined to allow [the public defender] to withdraw until he had a conversation with [Defendant's private counsel] and [private counsel]was well aware that this case was not going to be continued. And that it was with the Defendant's choice of counsel, however, that this case was going to proceed, as it had been preassigned for trial [and] had been pending for almost two years, and we were going to proceed today. [Private counsel] was made aware of that.

The prosecutor also told the trial court that Judge Hettenbach later spoke with Defendant's private counsel, and the judge allowed Defendant's public defender to withdraw on Friday, March 28. The prosecutor further stated it was her

_____
[2] The record does not contain a transcript of the proceedings before Judge Hettenbach. However, the State and Defendant do not dispute that the relevant circumstances surrounding Judge Hettenbach"s rulings are accurately reflected in the transcript of the trial court's pre-trial conference.

understanding that the public defender had given private counsel "everything," and private counsel "was pretty much up to date on[Defendant's] case." Defendant's private counsel confirmed to the trial court that the prosecutor's description of the circumstances surrounding Judge Hettenbach's rulings was accurate. Counsel also agreed "she knew[ew] what the defense is," she "had met with the Defendant numerous times, and [she] felt as though she was prepared to try this case knowing that it was going to be starting [on Monday, March 31] . . . . "

The following exchange then occurred between the trial court and Defendant's private counsel at the pre-trial conference:

> The Court: [W]hat you're saying is you believe that you are fully prepared and ready to try this case today?

> [Counsel]: Yes, Your Honor. But, if you're willing to grant [a] continuance, I'll take it. It's really a bad date, but I'm ready.

> The Court: Well, I mean, our procedures, our local rules here, provide that continuances are taken up in Division 16 by the Criminal Assignment Division Judge, which has [al]ready apparently been done.

> [Counsel]: Yes.

> The Court: So I would have to have an extremely good reason to grant a continuance after he has denied one. And what you're telling me is you are ready.

> [Counsel]: I'll say that I am ready, but I would not refuse a continuance.

> The Court: Well, all right, that's two different things . . . .

During the pre-trial conference, Defendant's private counsel told the trial court she had not reviewed a DVD of the Defendant's statement to the police, and the court allowed counsel to take a break from the conference so she could review the DVD. When the pre-trial conference continued on the record, the following exchange occurred between the trial court independent's private counsel:

> The Court: So we'll go back on the record, and . . . the record can reflect that we had a break, approximately, I think, a little over an[ ] hour-and a-half, hour and forty minutes. Correct? Right?

> [Counsel]: Yes, Your Honor.

> The Court: Now, [counsel], during that time have you had a chance to review th[e] DVD?

4

[Counsel]: Yes, Your Honor.

The Court: All right. And is there anything about that that causes you to change anything you previously said?

[Counsel]: No, I don't intend to put [Defendant] on the stand, so no objections.

The Court: All right. And the reason we took that break was simply because Infeed to be assured that you are ready to try this case. In other words, you've reviewed everything you need to review, you've 'ad the time to do everything you needed to do to prepare the case for trial. Is that correct?

[Counsel]: That's correct, Your Honor. . . .

The Court: [W]e talked . . . earlier about the fact that last Friday you did have the opportunity to discuss this case with [Defendant's former public defender], correct?

[Counsel]: Correct. . . .

The Court:. . . . I notice there's some minutes about depositions. Were there any depositions taken in this case?

[Counsel]: Yes, there were, Your Honor.

The Court: All right, and so have you had the opportunity to review transcripts of depositions?

[Counsel]: Yes, Your Honor.

The Court: All right . . . [B]ased on your review of all the materials that were provided to you, do you have any question at all about your ability to be ready to try this case now?

[Counsel]: No, I don't, I've reviewed everything.

Defendant's private counsel did not request the trial court to grant him a continuance at any time during the pre-trial conference, and the case proceeded to trial.

(Doc. 15-9 at 3-8.)

Petitioner filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15.  The Circuit Court denied petitioner's motion.  Petitioner filed a *pro se* motion for reconsideration which was denied.  The Court of Appeals affirmed the denial of the motion for post-conviction relief.  *Houston v. State*, 556 S.W.3d 124 (Mo. Ct. App. 2018).  In its Memorandum Supplementing Order Affirming Judgment Pursuant to Rule 84.16(b) (Doc. 15-5) the Missouri Court of Appeals, in its affirmance of the denial of post-conviction motion relief, stated the following:

### Factual and Procedural History

The State charged Houston with one count of forcible rape, one count of forcible sodomy, and one count of kidnapping. The charges arose from Houston abducting Victim and forcing her to perform sexual acts. The case proceeded to a jury trial.

At voir dire, the trial court questioned the venire members about the presumption of innocence, among other inquiries. The State then conducted an extensive voir dire; asking if any of the venire members were sexually assaulted, gauging their ability to hold the State to its standard of proof, and querying if any of them knew the witnesses. The State specifically listed the prospective witnesses' names, including the name and occupation of the nurse examiner who assisted Victim on the night of the incident ("Nurse"). After listing the names, the State again asked the venire panel, "Does anyone as [sic] think that they recognize any of those names?" No venire members indicated that they knew Nurse.

_____

[1] All rule references are to Mo. R. Crim. P. (2015).

After the State's questioning, defense counsel conducted a brief voir dire. Defense counsel limited her questions to whether any venire members ever "jumped to a snap conclusion," and if they could fairly consider the evidence should Houston not testify at trial.  Defense counsel also attempted to inquire if any potential jurors had ever been in a situation "where it was [their] word against someone else's"; however, the State successfully objected.

The State presented its case-in-chief. Following the State's examination of Nurse, Juror 692 informed the bailiff that he knew Nurse. The bailiff informed the trial court. The trial court then asked defense counsel and the State if either wished to question Juror 692. Defense counsel suggested that the trial court inquire into how Juror 692 knew Nurse. The trial court agreed to interview Juror 692, but stated its intent to limit its inquiry to whether Juror 692 would give Nurse's testimony more or less weight. Defense counsel stated that she would request an alternate juror be seated should Juror 692 indicate that he would give Nurse's testimony more or less weight. The trial court stated that it would grant defense counsel's request to replace Juror 692 if the juror indicated a bias. When Juror 692 entered the courtroom, the following exchange occurred:

TRIAL COURT: The question is simply that, it's my understanding from what the sheriff has told me, that you when you saw the witness, you believed you did—do recognize her from some prior contact; is that right?

JUROR 692: Correct.

TRIAL COURT: Now, whatever that contact is, does that make you either more likely to believe her than you would anybody else or less likely to believe her than you would anybody else? Or can you weigh her testimony basically the same as you would any other witness?

JUROR 692: It would be the same. I just know what she's talking about because I used to work in the ER.

TRIAL COURT: The same ER that she did?

JUROR 692: No, for SSM period.

TRIAL COURT: You just worked in the ER?

JUROR 692: Correct.

TRIAL COURT: So you don't know her from the ER?

JUROR 692: No.

TRIAL COURT: Okay. All right, that's all.

Defense counsel did not move to replace Juror 692. Juror 692 continued to serve on the jury and participated in deliberations.

(Doc. 15-5 at 3-5.)

On September 11, 2019, petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254.

## PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

In his federal habeas corpus petition, petitioner alleges the following grounds for relief:

(1) The trial court erred in allowing the admission of forensic DNA evidence.

(2) Petitioner's counsel rendered constitutionally ineffective assistance by initially requesting a continuance prior to trial but then reversing her stance and going to trial.

(3) Petitioner's counsel rendered constitutionally ineffective assistance of counsel by failing to object to a motion in limine, failing to object at trial, and failing to obtain a continuance to contest the validity of the state's DNA evidence.

(4) The state improperly obtained DNA evidence from petitioner.

(5) The state improperly obtained DNA evidence from petitioner through use of a buccal swab.

(Doc. 1.)

Respondent contends Grounds 1, 4, and 5 are duplicative, and all grounds are procedurally barred, not cognizable, and without merit. (Doc. 15.)

## STATUTE OF LIMITATIONS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), state prisoners have a one-year period in which to file federal habeas corpus petitions. 28 U.S.C § 2244(d)(1). This one-year period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Where the petitioner for federal habeas relief does not appeal to the state's highest court, the judgment becomes final when the time for seeking review with the highest court expires. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

Under Missouri Supreme Court Rules 30.27 and 83.02, the time limit for filing an application for transfer to the Supreme Court is fifteen days of the appellate opinion, memorandum decision, written order, or order of dismissal. Here, the Missouri Court of Appeals affirmed petitioner's conviction on September 29, 2015. (Doc. 15-10 at 4). Petitioner filed a Motion for Rehearing or Transfer to the Supreme Court on October 14, 2015, which was denied on November 5, 2015. (Doc. 15-10 at 4.) Thus, petitioner's direct appeal became final on November 20, 2015, and the one-year limitations period began to run.

However, the limitations period is tolled while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The term "pending" includes the interval between the trial court's denial

8

of post-conviction relief and the timely filing of an appeal from the denial, but does not include the time between the date direct review concludes and the date an application for state post-conviction relief is filed.  *Beery v. Ault*, 312 F.3d 948, 950 (8th Cir. 2002).

On December 15, 2015, or 25 days after the one-year time limit began to run, petitioner timely filed a motion for post-conviction relief, tolling the one-year limitation. (Doc. 15-11 at 1.) Petitioner's motion for post-conviction relief was denied on July 3, 2017. (Doc. 15-11 at 3.) Petitioner appealed this decision to the Missouri Court of Appeals.  The appellate court affirmed the judgment, issuing its mandate on September 28, 2018. (Doc. 15-12 at 4.)  The next day, September 29, 2018, the limitations period resumed, and it expired 340 days later on September 5, 2019.  Petitioner did not file his federal petition for habeas corpus relief until September 11, 2019, rendering the filing untimely.

Petitioner claims that equitable tolling should be applied, arguing that he has been pursuing his rights diligently and that "extraordinary transcript circumstances" prevented him from meeting the one-year filing deadline of § 2244(d)(1).  When seeking equitable tolling, petitioner bears the burden of establishing (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  The United States Court of Appeals for the Eighth Circuit has held that equitable tolling is proper only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time or when the conduct of the respondent has lulled the plaintiff into inaction.  *Jihad v. Hvass*, 267 F.3d 803, 805-06 (8th Cir. 2001).  Equitable tolling is "an exceedingly narrow window of relief." *Id.* at 805.  Here, petitioner's argument that he has been pursuing his rights diligently appears to be that he filed previous state appeals.  Petitioner fails to describe specific actions that demonstrate diligent pursuit outside of the normal appeals process.  Additionally, petitioner's issue with obtaining a transcript does not meet the kind of extraordinary circumstance beyond his control that entitles him to equitable tolling of the one-year statute of limitations.  "[L]ack of access to a transcript does not preclude a petitioner from commencing post-conviction proceedings and therefore does not warrant equitable tolling." *Jihad*, 267 F.3d at 806; *see also Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001) (possession of a transcript is not a condition precedent to filing for post-conviction relief and does not qualify as an "extraordinary circumstance" beyond a petitioner's control [to] prevent timely filing of a petition).  Therefore, equitable tolling is not applicable and petitioner's federal habeas corpus petition is untimely.

9

## EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for claims made in federal habeas corpus petitions under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2254(b)(1)(A).  If a prisoner "has the right under the law of the State to raise, by any available procedure, the question presented," he has not exhausted his state law remedies. 28 U.S.C. § 2254(c).  A petitioner must have fairly presented the substance of each federal ground to the state trial and appellate courts. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997).  If petitioner has not done so and he has no remaining state procedure available for doing so, any such ground for federal habeas relief is generally barred from being considered by the federal courts. *Grass v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011); *King v. Kemna*, 266 F.3d 816, 821 (8th Cir. 2001).

A petitioner may overcome the procedural bar if he can demonstrate a legally sufficient cause for the default and actual prejudice resulting from it, or that the federal courts' failure to review the claim would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  To establish cause for a procedural default, petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 753.  To establish actual prejudice, petitioner "must show that the errors of which he complains worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999) (internal citations omitted).

On direct appeal from his conviction, petitioner raised one ground:  The trial court erred in failing to continue the trial, because his counsel was not prepared. (Doc. 15-7 at 13.)  Petitioner raises this as Ground 2 of the instant federal habeas petition. (Doc. 1 at 6-7.)

Petitioner raised multiple grounds in his post-conviction motion. (Doc. 15-2 at 22-58.) However, he did not raise any of these grounds in his federal habeas petition.

On appeal from the denial of post-conviction relief, petitioner raised two grounds: (1) trial counsel was ineffective for failing to move for a mistrial based on Juror 692's knowledge of or acquaintance with a witness; and (2) trial counsel was ineffective for conducting an inadequate inquiry on *voir dire* into potential jurors' ability to presume petitioner innocent, to hold the state to its burden of proof, to avoid shifting the burden of proof to petitioner, and to fairly and impartially judge a sexual assault victim's credibility. (Doc. 15-3 at 17-20.)  Petitioner has not raised any of these grounds in his federal habeas petition.

10

The failure to brief a claim on appeal constitutes a default that gives rise to an adequate and independent state procedural bar to review. *Sweet*, 125 F.3d at 1149-1150. For federal court review to occur, petitioner must show good cause and actual prejudice. *Coleman*, 501 U.S. at 750. Petitioner has failed to do so.

Petitioner raised all five of his federal grounds in his original post-conviction motion. (Doc. 15-2 at 10.) However, an amended motion for post-conviction relief was filed; the amended motion superseded the original motion. The amended motion contained none of the grounds now brought by petitioner in his federal habeas petition. (Doc. 15-2 at 23-58.)

In his appeal from the denial of state post-conviction relief, petitioner failed to raise any of the grounds set forth in his federal habeas petition. Petitioner admits that his grounds raised in the federal habeas petition have not been fully adjudicated by the state courts but argues that counsel prejudiced him by failing to incorporate his earlier *pro* se grounds into the amended motion. (Doc. 17 at 7-9.) The argument raised by petitioner is without merit. Ineffective assistance of counsel is not a cause for procedural default. *Interiano v. Dormine*, 471 F.3d 854, 857 (8th Cir. 2006) (default not excused when postconviction counsel failed to raise a claim in an amended 29.15 motion, or an appeal from the denial of that motion, which had been included in petitioner's pro se postconviction motion). "The mere fact that counsel failed to recognize the factual or legal basis for a claim or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." *Murray v. Carrier*, 477 U.S. 478, 486 (1986); *see also Zeitvogel v. Delo*, 84 F.3d 276, 279 (8th Cir. 1996) ("To establish cause, [petitioner] must show something beyond the control of postconviction counsel, like State interference, actually prevented postconviction counsel from raising the claims and presenting the evidence in state court.").

Petitioner also failed to show that this Court's failure to consider the defaulted grounds would result in a miscarriage of justice. A miscarriage of justice would exist if petitioner presented new evidence of actual innocence showing it is more likely than not that a reasonable juror would not have convicted the petitioner. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). While petitioner claims he is actually innocent, he has not presented evidence of actual innocence or demonstrated that a jury would have been unreasonable in finding him guilty.

Accordingly, all of petitioner's federal grounds have not been exhausted and are procedurally barred.

The Court has nevertheless considered the merits of petitioner's grounds for relief.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

## STANDARD OF REVIEW

The AEDPA provides that habeas relief may not be granted by a federal court on a claim that has been decided on the merits by a state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

"A state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of a factual similarity to the state case or because general federal rules require a particular result in a particular case." *Tokar v. Bowersox*, 198 F.3d 1039, 1045 (8th Cir. 1999).  This standard is difficult to meet, because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (citations omitted).  The issue a federal court faces when deciding whether a state court unreasonably applied federal law in a habeas case is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).  A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (per curiam) (citations omitted).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010).  Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 182-83 (2011).  Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief.  28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

Here, however, since petitioner's Grounds were not fully adjudicated on the merits, the pre-AEDPA standard for habeas review governs. *Gingras v. Weber*, 543 F.3d 1001, 1003 (8th Cir. 2008) ("Because [petitioner's] apparently unexhausted claim was not adjudicated on the merits, we likely should apply the pre-AEDPA standard of review, rather than the deferential standard of 28 U.S.C. §2254(d).") (internal citations and quotations omitted).  Under the pre-AEDPA standard, the habeas petitioner must show a "reasonable probability that the error complained of affected the outcome of the trial, or that the verdict likely would have been different absent the now-challenged [defect]." *Robinson v. Crist*, 278 F.3d 862, 865-66 (8th Cir. 2002).

## DISCUSSION

### A.    Ground One

Petitioner first alleges that the trial court erred in admitting forensic DNA evidence that was obtained illegally because the testing was not done in the regular course of business and failed to produce a CODIS hit. (Doc. 1 at 5.)  The manner in which this DNA was obtained is discussed in Grounds 4 and 5.

"Federal habeas corpus relief does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  The admission or exclusion of evidence in a state criminal case is a question of state law and rarely gives rise to a federal question reviewable in a habeas petition. *Scott v. Jones*, 915 F.2d 1188, 1190-91 (8th Cir. 1990).  Federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights." *Evans v. Luebbers*, 371 F.3d 438, 443 (8th Cir. 2004).  The Court can review a state court evidentiary ruling in a habeas petition only to determine if the asserted error denied due process. *Bailey v. Lockhart*, 46 F.3d 49, 50 (8th Cir. 1995).  This occurs when the evidentiary ruling is "so conspicuously prejudicial or of such magnitude as to fatally infect the trial." *Osborne v. Purkett*, 411 F.3d 911, 917 (8th Cir. 2005).  The evidentiary mistake must be "so egregious that [it] fatally infected the proceedings and rendered [petitioner's] entire trial fundamentally unfair." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

The admission of evidence regarding petitioner's forensic DNA evidence does not implicate his federal constitutional rights.  Petitioner argues that a motion in limine was improperly granted on the first day of trial regarding the forensic DNA evidence, allowing the evidence to be admitted at trial.  (Doc. 17 at 3).  However, a ruling on a motion in limine is not final and a party

13

can still object when the error sought to prevent is about to occur at trial.  At trial, counsel for petitioner failed to object to any testimony offered regarding the forensic DNA evidence or any related exhibits and, in numerous instances, verbally stated that petitioner had no objection. (Doc. 15-1 at 478-529.)  Nothing indicates that allowing admission of this forensic DNA evidence was legally erroneous and conspicuously prejudicial or fatally infected his trial to render entire trial fundamentally unfair.

Accordingly, Ground 1 is without merit.

**B.     Ground Two**

In Ground 2, petitioner alleges his trial counsel rendered constitutionally ineffective assistance of counsel by initially requesting a continuance prior to trial, but then reversing her stance and stating she could take the case to trial. (Doc. 1 at 6.)  The Supreme Court has determined that the right to effective assistance of counsel arises from the Sixth and Fourteenth Amendments. *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner is entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Id.* at 686.

To prevail on an ineffective assistance of counsel claim, petitioner must prove two elements. First, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88.  Petitioner must overcome the fact that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.  Counsel's strategic decisions made after thorough investigation are virtually unchallengeable. *Id.* at 690-91.  Additionally, decisions following reasonable, but less thorough, investigation are to be upheld to the extent that they are supported by reasonable judgment. *Id.*

Second, petitioner must demonstrate actual prejudice by counsel's deficient performance. *Id.* at 687.  "[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696.

The trial court and petitioner's counsel discussed the continuance at the pre-trial conference:

14

> The Court: [W]hat you're saying is you believe that you are fully prepared and ready to try this case today?
>
> [Counsel]: Yes, Your Honor. But, if you're willing to grant [a] continuance, I'll take it. It's really a bad date, but I'm ready.
>
> The Court: Well, I mean, our procedures, our local rules here, provide that continuances are taken up in Division 16 by the Criminal Assignment Division Judge, which has [al]ready apparently been done.
>
> [Counsel]: Yes.
>
> The Court: So I would have to have an extremely good reason to grant a continuance after he has denied one. And what you're telling me is you are ready.
>
> [Counsel]: I'll say that I am ready, but I would not refuse a continuance.
>
> The Court: Well, all right, that's two different things . . . .

(Doc. 15-1 at 17.)

Further, the conversation continued with the trial court inquiring as to whether petitioner's counsel had a chance to review all of the evidence in the case:

> The Court: All right. And the reason we took that break was simply because I need to be assured that you are ready to try this case. In other words, you've reviewed everything you need to review, you've had the time to do everything you needed to do to prepare the case for trial. Is that correct?
>
> [Counsel]: That's correct, Your Honor. . . .
>
> The Court: [W]e talked . . . earlier about the fact that last Friday you did have the opportunity to discuss this case with [Defendant's former public defender], correct?
>
> [Counsel]: Correct. . . .
>
> The Court: . . . . I notice there's some minutes about depositions.  Were there any depositions taken in this case?
>
> [Counsel]: Yes, there were, Your Honor.
>
> The Court: All right, and so have you had the opportunity to review transcripts of depositions?
>
> [Counsel]: Yes, Your Honor.

The Court: All right . . . [B]ased on your review of all the materials that were provided to you, do you have any question at all about your ability to be ready to try this case now?

[Counsel]: No, I don't, I've reviewed everything.

(Doc. 15-1 at 19-22.)

The Court of Appeals considered this exchange in determining a similar, albeit different, argument advanced by petitioner that the trial court should have granted the continuance *sua sponte*. (Doc. 15-9 at 8.)  The court found that there was no error by the trial court in failing to continue the case as petitioner's counsel repeatedly assured the trial court that she was fully prepared and ready to try the case. (Doc. 15-9 at 10.)  Additionally, the court determined that any alleged prejudice suffered by petitioner was a result of his own actions by changing attorneys five days prior to trial. (Doc. 15-9 at 11.)

Under the AEDPA, a federal district court presumes a state court's factual findings are correct. 28 U.S.C. § 2254(e)(1).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.*  Petitioner has failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness to overcome the strong presumption that counsel rendered constitutionally effective assistance. *Strickland*, 466 U.S. at 490.  Petitioner's trial counsel had a chance to review the entire file prior to trial and stated multiple times that she was fully prepared to try the case.  Thus a continuation was unnecessary. (Doc. 15-9 at 7-10.)

Nor has petitioner demonstrated actual prejudice.  Petitioner has not produced any evidence that the decision reached would likely have been different absent the alleged error of failing to continue his case.

Accordingly, Ground 2 is without merit.

## C.    Ground Three

In Ground 3, petitioner alleges his trial counsel rendered constitutionally ineffective assistance by failing to object to a motion in limine, failing to object at trial, and failing to obtain a continuance to contest the validity of the forensic DNA evidence.  The allegation that trial counsel was constitutionally ineffective by failing to obtain a continuance was discussed in Ground 2, so the Court focuses on the remaining allegations.  Petitioner's other arguments specifically

16

claim that trial counsel was ineffective for failing to object to the state's motion in limine and failing to object to the admittance of evidence regarding the forensic DNA evidence of petitioner obtained by buccal swab. (Doc. 17 at 3.)

Under *Strickland*, petitioner must prove that his counsel's performance fell below an objective standard of reasonableness and also that this deficient performance caused actual prejudice. 466 U.S. at 687-88. The state's motion in limine was discussed prior to the beginning of trial, and petitioner's trial counsel raised no objection. (Doc. 15-1 at 7-26.) Additionally, petitioner's trial counsel raised no objection to testimony or exhibits introduced into evidence regarding the DNA evidence obtained from petitioner. (Doc. 15-1 at 478-529.) Specifically, petitioner's argument appears to be that the DNA evidence was not properly authenticated and his counsel should have objected to its admission presented other DNA evidence run through the CODIS database which did not match petitioner. (Doc. 17 at 8.)

Here, the argument advanced by petitioner relies on conclusory assertions and fails to provide the necessary factual allegations to support a claim that counsel's performance fell below an objective standard of reasonableness. Petitioner generally claims that the DNA evidence was not properly authenticated, but he fails to provide any factual allegation as to how the evidence was not properly authenticated that would lead reasonably competent counsel to object.

Second, petitioner has not demonstrated actual prejudice. Petitioner has not met his burden of showing that the jury's verdict likely would have been different absent the asserted errors. He has failed to produce particularized facts to support the allegation in Ground 3. Petitioner merely generally alleges that his due process and general rights were violated. (Doc. 17 at 8.) Thus, petitioner failed to demonstrate actual prejudice resulting from counsel's failure to object to the introduction of the DNA evidence.

Petitioner failed to demonstrate his attorney acted ineffectively, nor has he, for the reasons discussed above, demonstrated actual prejudice, because he has failed to make colorable allegations to show that objections to the admission of the DNA evidence would have succeeded and altered the outcome of his trial. Accordingly, Ground 3 is without merit.

### D.       Grounds Four and Five

Petitioner's Grounds 4 and 5 allege that the DNA buccal swabs were unlawfully taken from him, because DNA evidence was already on file from a previous arrest and was a non-match, which the trial court was not advised of.  The Court ruled regarding Ground One, above, that the admission of petitioner's DNA sample at trial was not unconstitutional.  To the extent that Grounds Four and Five assert that the state's obtaining of the DNA evidence violated the Fourth Amendment, the grounds are not cognizable in this federal habeas action, unless petitioner had no opportunity in the Missouri state courts to litigate the ground fairly and fully.  *See Stone v. Powell*, 428 U.S. 465 (1976).  Nothing in petitioner's allegations indicate that he and his counsel had no opportunity to seek the suppression of the evidence under the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches."  The essential purpose of the Amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."  *Carpenter v. United States*, 138 S.Ct. 2206, 2213 (2018).  In *Katz v. United States*, the Supreme Court recognized that "the Fourth Amendment protects people, not places."  389 U.S. 347, 351 (1967).  The proper function of the Fourth Amendment is to prevent intrusions which are not justified and made in an improper manner. *Maryland v. King*, 569 U.S. 435, 446-47.  Ultimately, the measure of constitutionality of a Fourth Amendment search is "reasonableness."  *Id.* at 447.

The Supreme Court has held that "using a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search" under the Fourth Amendment as it invades into the personal security of the human body. *King*, 569 U.S. at 446.  Use of a buccal swab involves light touch on the inside of the cheek, rendering the intrusion negligible in determining reasonableness of the search.  *Id.*

In *King*, the defendant was arrested after raping a woman and his DNA was taken through the use of a buccal swab pursuant to provisions of the Maryland DNA Collection Act. *Id.* at 440-41.  The defendant's DNA sample was initially obtained without a warrant pursuant to the Maryland DNA Collection Act, but a second DNA sample was obtained via buccal swab after detectives obtained a search warrant. *Id.* at 441.  The Supreme Court determined that the government had a legitimate interest in knowing the identity of the person arrested, whether he is wanted elsewhere, and ensuring his identification in the event he flees prosecution.  *Id.* at 461.

18

Additionally, the Court found that the search via buccal swab was minimal and reasonable based on the defendant's reasonable expectation of privacy. *Id.*  A gentle rub on the inside of the cheek involves no trauma, risk, or pain, and does not increase the indignity already attendant to normal incidents of arrest.  *Id.* at 464.  As such, the Court held the buccal swab search upon an arrestee was constitutional under the Fourth Amendment. *Id.* at 465.

Petitioner's claim that the buccal swab DNA sample obtained from him by Detective Andre Smith was an unconstitutional search under the Fourth Amendment is without merit.  Discussed above, the *King* case decided by the Supreme Court clearly indicates that buccal swab DNA samples, while classified as a "search" under the Fourth Amendment, are not unconstitutional searches.  Here, Det. Smith initially asked petitioner to allow the buccal swab, but petitioner refused. (Doc. 15-1 at 478.)  Then Det. Smith obtained a search warrant from a judge to obtain a buccal swab DNA sample. (Doc. 15-1 at 479-81.)  This sample was conveyed to a laboratory. (Doc. 15-1 at 481-82.)  Petitioner's claims that Det. Smith "fabricated evidence" and "illegally seized" petitioner's DNA have no basis in fact. (Doc. 17 at 3.)  The search conducted by Det. Smith to obtain the DNA sample was reasonable and constitutional under the Fourth Amendment.

Grounds 4 and 5 are without merit.

## CONCLUSION

For the reasons set forth above, the petition of Michael J. Houston for a writ of habeas corpus is denied. Petitioner made no substantial showing that he was deprived of a constitutional right.  Therefore, a certificate of appealability is denied. 28 U.S.C. § 2253(c)(2).

An appropriate Judgment Order is issued herewith

/s/   **David D. Noce**
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 30, 2021.

19